[No. 31093.   Department One.   November 1, 1949.]

CLYDE STRICKER, *Plaintiff*, v. JACK P. POWERS *et al.*, *Defendants.*

FRED H. BERK *et al., Appellants,* v. G. A. GAYDA *et al., Respondents.*[1]

[1]Reported in 210 P. (2d) 814.

*Geo. W. Young,* for appellants.

*John Huneke,* for respondents.

DONWORTH, J.—This is an action to foreclose two mechanics' and materialmen's liens.

The suit was originally instituted by Clyde Stricker against Fred H. Berk and Luella A. Berk, his wife, who are owners of the real property involved in this case. All other persons having any record interest therein were also joined as defendants. Two of these, G. A. Gayda and Frank Kuesterman, filed cross-complaints against Berk and wife seeking to foreclose their respective liens. In this opinion they will be referred to as plaintiffs or respondents and the defendants Berk and wife as defendants or appellants.

The case came on for trial upon the cross-complaints of the two plaintiffs and the separate answers made by the defendants to each cross-complaint denying the material allegations of each.

At the conclusion of the trial, the court took the case under advisement and wrote a memorandum opinion holding that each of the plaintiffs was entitled to foreclose his lien against defendants' fee interest in the real estate, and thereafter entered findings of fact and conclusions of law in accordance therewith. From the decree entered in favor of each of the plaintiffs granting the relief prayed for, the defendants have prosecuted this appeal.

Subsequent to the filing of the notice of appeal in this court, but prior to the argument of the case, defendant Fred H. Berk died and his widow was duly appointed and qualified as executrix of his estate. Accordingly, an order was entered in this court substituting the executrix as an appellant in place of her late husband.

In order to understand the problems involved in this case, it is necessary to state the facts somewhat in detail.

In May, 1946, the defendants were the owners of the real estate described in the cross-complaints, which premises were known as north 322 Freya street in the city of Spokane. The defendant Fred H. Berk had moved a building from its former location to the premises above described. The building was described in the testimony as a shell having no floor, doors, heating plant, or windows.

In the early part of May, 1946, a nonprofit corporation known as Wings of Spokane, Inc., herein referred to as "Wings," through its secretary Sidney Grinstein, was negotiating with defendants for a lease of this property for the purpose of establishing a club house there. At this time, Wings had employed Dean L. Donaldson, an architect, to prepare plans for converting this building into a club house. A lease was entered into between the defendants and Wings under date of April 18, 1946, but this lease was canceled by mutual consent July 12, 1946, and is not involved in this case.

On July 11, 1946, the defendants entered into a lease of the premises, in which B. B. Builders, Inc., was designated as lessee. This lease provided for a term of three years from June 1, 1946, with an option for renewal for two years additional upon thirty days' written notice. The lease was subject to successive renewals for two-year periods with the proviso that the maximum term possible should not exceed ten years from June 1, 1946.

The stipulated rental was one hundred dollars per month, and at the time of the execution of the lease, the lessee paid the lessors three hundred dollars, of which two hundred dollars represented the rent for the first two months of the term, and the remaining one hundred dollars was to be applied in payment of the rental for the last month of the thirty-six month term. However, Berk testified that no rent was actually charged until January, 1947, and that the two hundred dollars was applied in payment of the rental for January and February of that year.

The obligations of the defendants as lessors with respect to the construction or reconstruction of the existing building on the premises is stated in the lease as follows:

" . . . *said building now being constructed by the Lessor, Fred H. Berk, and to be completed by him* on or about the 1st day of August, 1946, on said lot, *in accordance with the plans and specifications attached hereto* marked Exhibit A and by reference made a part hereof, *and as hereinafter mentioned.*

"The exterior walls are to be of stucco construction on the outer side; the interior sides of the walls are to be plastered.

"The Lessors agree to install in said building a concrete floor covering the surface of the interior of said building and to cover said concrete floor with wood flooring at the expense of the Lessee if suitable wood flooring can be obtained. This latter provision is made with the general intention that it is not mandatory but that both parties will arrange for the installation of such wood floor if possible. The exterior of the building shall be painted a cream color at the expense of the Lessors.

"The Lessors agree to install glass blocks in the upper one half of the opening now existing near the center of the west wall, the lower one-half of said opening to be of stucco construction, and the Lessee will pay the cost of the difference between the cost of the glass blocks, their installation and the stucco work, and the cost of the door the Lessors intended to install in said opening.

"The Lessors will install a furnace in the furnace room to be located in the southeast corner of said building and the Lessee agrees to assume the cost of maintaining it and the cost of fuel.

"The Lessee will pay the cost of materials, labor and wiring in the construction of the game room and this improvement to the building shall become the property of the Lessors at the expiration of this lease." (Italics ours.)

The lease further provided that future decorating and painting should be done at the sole expense of the lessee but only after the written consent of the lessors had first been obtained. For the purpose of securing performance of the covenants of the lease by the lessee, the lessors were given a lien upon all of the property of the lessee then upon, or thereafter brought upon, or erected upon the premises.

Paragraph 7 of the lease contained this provision:

"That no work in building, repairing, decorating, altering, or any improvement done upon said premises by or under the direction of the Lessee shall in any way constitute or be made a lien upon said premises."

The lease further provided that the lessee should have the right to maintain a bar and dispense intoxicating liquor in selling the same by the drink in the manner provided by law and when properly licensed to do so.

Paragraph 15 of the lease provided:

"It is the general intention of the parties hereto that the Lessee shall install all of his own equipment and fixtures with the exception of the plumbing fixtures in the ladies' rest room, which the Lessors will install. The Lessors will supply and install a door to the Ladies' rest room.

"The Lessee will pay for the cost of installation and fixtures and plumbing equipment and construction of the men's rest room and for the cost of the door leading from the office into the lounge. It is the intention of the parties hereto that the Lessors shall pay for all of the standard lighting fixtures and the Lessors will install standard wiring for the building.

"The cost of the plumbing connections for the bar sink and their installation shall be paid by the Lessee.

"It is agreed by the parties hereto that the Lessors will not install a rest room, plumbing equipment and fixtures as shown in Exhibit 'A' at the right end of the bar."

B. B. Builders, Inc., the lessee named in the lease just described, on the day following the execution of the lease, entered into a sublease with Wings for a term of two years from August 1, 1946, at a rental of two hundred dollars per month. In the sublease, Wings covenanted to pay four hundred dollars to B. B. Builders, Inc., upon the execution thereof, of which two hundred dollars was the rental for the first month of the lease and two hundred dollars was for the rental for the last month of the twenty-four month term. This lease provided that Wings should use the building and premises for recreational purposes for its members and their guests and gave permission to Wings to maintain a bar and dispense intoxicating liquor by the drink in the

manner provided by law and when properly licensed to do so.

The defendant Berk testified that he did not know the parties who signed the lease on behalf of B. B. Builders, Inc., and never dealt with them in any way, but continued to deal with Wings as his own tenant. He collected rent directly from Wings and treated that corporation as though it were his tenant under the lease of July 11, 1946. We shall therefore disregard the existence of B. B. Builders, Inc., as having any material bearing upon the problems involved in this case.

The plans and specifications, which were attached to and made a part of the lease dated July 11, 1946, consist of several blueprint drawings prepared by Dean L. Donaldson, the architect for Wings. There were no specifications separate from what is shown on these blueprints. The blueprints show in some detail the floor plan of the building and the type of construction called for, including the heating plant. They also show the location and type of construction of the bar to be installed, as well as the location of the cabinets or counters in the game room, where fifteen slot machines were to be placed.

It is to be noted that none of the leases herein mentioned were ever recorded and neither of the plaintiffs had any knowledge of their provisions, except that plaintiff Gayda was furnished with a copy of the blueprints attached to the lease of July 11, 1946.

It appears to us from an examination of these blueprints and the quoted provisions of the lease to which they are attached that Berk was obligated to perform all the work shown on the blueprints except the items specified in the first and fifteenth paragraphs of the lease as being the responsibility of Wings.

Berk commenced the alteration of the building while the lease of April 18, 1946, in which Wings was directly designated as the lessee, was in effect. Early in July, at or about the time the lease between Berk and B. B. Builders, Inc., was executed, Berk became financially involved and could

not complete the alterations for which he admits he was responsible under the lease dated July 12, 1946. At that time, the plaintiff Gayda was asked if he would undertake to finish the building in accordance with the blueprints on a cost plus ten per cent basis. His first connection with the transaction is described in the memorandum decision of the trial court in the following language:

"So far as plaintiff Gayda is concerned, the evidence discloses that he, in company with Grinstein, Donaldson, Berk and Berk's son, met at Berk's building July 7th, 1946. Donaldson showed the blueprints to Gayda and asked him if he would undertake to finish the building in accordance with the said plans. Gayda agreed to undertake the work on a cost plus basis. Berk was present during the entire conversation but didn't participate therein. All the conversation was between Grinstein and Donaldson, on the one hand, and Gayda on the other. Donaldson told Gayda at that time that Berk was the owner of the building, and Berk informed Gayda that Wings would pay for the job. As the result of this information Gayda sent three statements to Wings of amounts due. The first two statements, in evidence as Defendant's Exhibit No. 8, were paid by Wings, but the third statement, which was for the balance due, in evidence as Plaintiff Gayda's Exhibit No. 7, was never paid by either Wings or Berk.

"The liens filed by the two plaintiffs on Berk's premises are in evidence, Plaintiff Gayda's lien being Exhibit No. 8, and Plaintiff Kuesterman's lien being Exhibit No. 9.

"There is no evidence in the record of any *agreement*, either oral or in writing, between plaintiffs and Berk to the effect that plaintiffs were to look to Wings for their pay.

"Gayda started the work in connection with the plans on July 8th, in the presence of Berk, and the first load of lumber was delivered at that time with the knowledge of Berk, who inquired from whom the lumber was purchased. In accepting the job on a cost plus basis, Gayda agreed to furnish the labor and material up to the amount of $2000, Donaldson having informed Gayda in Berk's presence, that Berk had started the job but didn't have the money to finance the completion of the same.

"When Gayda started on the work the building was only a shell. He completed the shell by putting in the windows, finishing the door frames, installing different doors, placing glass brick in the east wall of the building, straightening

up the front of the building, placing a concrete base for glass brick in the west wall, laying a sidewalk and installing a curb, and some other miscellaneous work in connection with the shell of the building, as well as what the plans required for the inside.

"During a good part of this time, and, in fact, throughout the entire job, Berk, himself, was present and gave directions as to how certain of the work was to be done, particularly with respect to the west wall and the supporting of the glass brick by a concrete base; likewise, with respect to the covering of a channel in the ground under the building, strong enough to support a concrete floor above. Berk also instructed Gayda with reference to the windows for the east wall, as to what to do in order to make them leakproof. With respect to the concrete sill for the glass blocks in the west wall, Berk, himself, hired one Rollo and his own son to do that work. Gayda paid Rollo and Berk, Jr., as a part of the $2000 he had agreed to advance for labor and materials. The checks to Rollo and Berk, Jr., are in evidence as Plaintiff's Exhibits 4 and 5.

"During the work Berk informed Gayda that he wanted the walls finished with plaster and that he had hired Powers & Johnson to do the plastering. He also gave orders that instead of a transom over the toilet door there must be a vent through the roof. Berk, also asked Gayda to finish the cornice on the building. During the progress of the work Berk told Gayda that Wings was to finish the building on the inside, and, after the expiration of the three year lease to Wings, it was to revert to him."

Gayda performed work and furnished materials with respect to the building (both inside and outside) between July 8, 1946, and March 17, 1947. He was paid for all work performed up to October 21, 1946. At that time most of the work on the building itself had been completed except installing window sills in order to make the windows watertight.

On October 17, 1946, without Gayda's knowledge, Berk made a settlement with Wings whereby he paid Wings $1,610 and was given a receipt reading:

"Receipt of $1610 from Fred H. Berk. Wings of Spokane to pay the balance of the bills to finish the building at 322 N. Freya with the exception of the following items: Grading; Purchase and installation of boiler; Installation and

purchase of radiators; Installation and purchase of hot water heater."

Appellants contend that this payment completely discharged all of their obligations under the lease with respect to the building, and that none of the items for which Gayda claims a lien were their responsibility.

Wings opened up its club about January 9, 1947, and paid rental to Berk each month to and including June, 1947. Wings abandoned the premises shortly thereafter.

When Gayda completed his work March 17, 1947, he sent a statement to Wings for the balance claimed to be due him in the amount of $2750.40 made up of the following items:

| "Feb. 6, 1947 | Labor and Material laying glass blocks | 268.56 |
| | "        "        "        cutting glass | 26.18 |
| | "        "        "        Bar top | 161.88 |
| | Cartage .............................. | 76.41 |
| | Alumium Thresholds ................. | 14.14 |
| | Game room cabinets, two outside doors, finish lumber ..................... | 468.94 |
| | Carpenter labor .................... | 1500.14 |
| | Payroll taxes on labor............... | 63.45 |
| March 13, 1947 | Labor and material prepaing kitchen for plaster, and miscellaneous carpenter work in building............ | 54.30 |
| March 17, 1947 | Building and installing kitchen cabinets material hardware and miscellaneous carpenter work in kitchen.. | 116.40 |
| | | 2750.40" |

The total of the above items is the amount of the lien claim filed by Gayda on April 29, 1947, for the foreclosure of which he filed his cross-complaint.

The question to be determined is which of these items (if any) are obligations of the appellants. To answer this question, we must determine whether under the evidence Wings was the agent of the appellants so that their interest in the real estate is subject to Gayda's lien claim.

■ Under the circumstances described in the portion of the trial court's memorandum decision above quoted, Berk permitted Gayda to undertake to finish all such work which Berk was financially unable to do. Berk was fully aware that Gayda was entering into a contract with Wings to perform the labor and furnish all materials necessary to produce the result called for by the blueprints. He was present

at the building while much of the work was being performed by Gayda and participated by giving directions to him regarding portions of the work. Berk never told Gayda regarding the respective obligations of himself and Wings under the unrecorded lease. He merely told Gayda that Wings would pay him for the work. We cannot find under the evidence that Gayda's conduct in sending his bills to Wings at Berk's suggestion was legally sufficient to constitute a waiver of his lien rights against Berk.

An apparent agency is defined in the Restatement of the Law of Agency, § 8, Comment (a), in this language:

"An apparent agent is a person who, whether or not authorized, reasonably appears to third persons, because of the manifestations of another, to be authorized to act as agent for such other."

Under the facts of this case, we hold that appellants are estopped to deny that Wings was their agent in dealing with Gayda as to the performance of all work called for by the blueprints both inside and outside the building.

The testimony of Gayda regarding the items making up the total of his lien claim is quite indefinite, and it is impossible for us to determine from the record for which, if any of them, the appellants Berk are liable to respondent Gayda.

Gayda is entitled to foreclosure of his lien claim only as to those items which are shown on the blueprints. If any items included in his claim of lien are based on work performed or materials furnished at the instance of Wings which are *not* described in the blueprints, Gayda is not entitled to foreclosure of his lien claim with respect thereto.

Accordingly, we reverse the judgment as to respondent Gayda and remand the case to the trial court to take such further testimony upon this point as it deems necessary to enable it to decide the correct amount of lienable items in accordance with the views expressed herein.

Appellants assign as error the denial of a motion for nonsuit at the conclusion of the testimony presented by each respondent on the ground that the respective lien

claimants should have delivered or mailed notices to them in accordance with the provisions of Rem. Rev. Stat. § 1133 [P.P.C. § 180-3]. The trial court denied these motions upon the ground that, since Berk was present at the premises at the time that Gayda commenced work and also had ordered the conversion of the oil burner by respondent Kuesterman, appellants were estopped to complain of the failure to give such notice. We are of the opinion that the trial court was correct in its ruling on each of these motions.

Appellants also assign as error certain findings made by the trial court in finding that Wings was the agent of Berk and that Wings was the tenant of Berk. We are of the opinion from our examination of the evidence that it sustains the findings complained of.

We now consider the lien claim of respondent Kuesterman which is based upon a transaction between him and Berk.

In October, 1946, Berk came to this respondent's place of business and asked him if he would install Berk's Hart oil burner in the premises involved in this case. Kuesterman told Berk that it would be necessary to convert it from a low pressure burner to a high pressure burner. Kuesterman asked Berk who owned the real property in which the burner was to be installed, and Berk replied that he did. Kuesterman testified that he quoted $324.75 plus sales tax as the cost of converting and installing the burner. Berk told him that Wings would pay for the work.

A few days later, the Hart burner was delivered at respondent's shop. He began his work about December 22, 1946, and completed the conversion and installation about January 17, 1947.

When he took the converted burner to the premises to install it, Kuesterman found that it was necessary to do additional work outside the building in order to connect the burner. His charge for the entire job was $411.12, for which amount he sent two statements to Wings. Not receiving payment, Kuesterman filed his lien claim in this amount on April 16, 1947.

In his testimony, Berk denied that Kuesterman quoted him a price when they were discussing the matter in Kuesterman's office. Berk testified that he told Kuesterman explicitly that he had nothing to do with paying for the work and that Kuesterman would have to look to Wings exclusively for his pay.

The problem involved regarding Kuesterman's lien claim is principally a question of fact. Appellants assign as error the findings of the trial court which are concerned with this transaction. We have carefully examined the evidence relating to Kuesterman's claim and are of the opinion that it supports the findings of which appellants complain, which are to the effect that there was a contract between these two parties regarding the conversion and installation of the oil burner.

We, therefore, hold that the trial court was correct in decreeing foreclosure of Kuesterman's claim of lien.

The decree of the superior court is reversed as to respondent Gayda and the case is remanded to the trial court for the purposes hereinbefore specified. As to respondent Kuesterman, the decree is affirmed. Appellants will recover their costs in this court from respondent Gayda.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and GRADY, JJ., concur.